**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
RUBIE'S COSTUME COMPANY, INC.,
and PRINCESS PARADISE CREATIONS,
LLC, d/b/a PRINCESS PARADISE,

        Plaintiffs,    **MEMORANDUM & ORDER**

   - against -

              CV 16-6517 (SJF) (AKT)

KANGAROO MANUFACTURING, INC.,
YAGOOZON, INC., and JUSTIN LIGERI,

        Defendants.
----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

   Counsel for Kangaroo Manufacturing, Inc., Yagoozon, Inc., and Justin Ligeri (collectively, "Defendants") in this contract and trademark action has filed a motion seeking to preclude the deposition testimony at trial of Aleem Aziz ("Aziz"), assistant to the Chief Financial Officer of Plaintiff Rubie's Costume Company, Inc. ("Plaintiff" or "Rubie's") "on certain issues of fact as a discovery sanction or, in the alternative, to compel further deposition testimony from Mr. Aziz and the production of certain documents in connection with that testimony." DE 47 at 1. Defendants contend that during Aziz's deposition, Plaintiffs' counsel improperly asserted the attorney-client and work product privileges, as well as the common interest doctrine, in directing the witness not to answer certain questions. *Id*. Defendants also assert that Plaintiffs' failure to provide a privilege a log waives any privilege that may have been properly asserted. *Id*. at 3.

   In opposing the motion, Plaintiffs' counsel maintains that (1) Defendants' counsel failed to comply with Local Civil Rules 26.4 and 37.3 by not undertaking the required good faith "meet-and-confer" obligation before filing the instant motion; (2) although Defendants seek the

production of "certain documents" in connection with the motion to compel further testimony from Aziz, they do not identify the specific documents sought in connection with the motion, in violation of Local Civil Rule 37.1; (3) the motion violates Section II(b) of the Case Management and Scheduling Order; (4) the request to preclude Aziz's testimony at trial is procedurally improper since the proper remedy is an Order compelling rather than precluding his testimony; (5) a motion for sanctions under Rule 37(b) is improper because Plaintiffs have not violated any Order issued by the Court; (6) Plaintiffs' counsel properly asserted the work-product privilege as a basis for directing the witness not to answer; (7) Plaintiffs' counsel properly asserted the common interest doctrine as a basis for directing the witness not to answer; and (8) there was no subject matter waiver with respect to Aziz's testimony.

As an initial matter, the Court acknowledges that it does not appear Defendants' counsel complied with Local Civil Rule 37.3(a), in that he did not submit any certification that he met and conferred in good faith with Plaintiffs' counsel in an attempt to resolve the instant dispute. Notwithstanding this fact, given the number of points of contention and the distance between the parties on each issue, the Court recognizes the likelihood that even if the appropriate meet-and-confer had occurred, there would likely still be several disputes for the Court to resolve. The Court in its discretion therefore declines to deny the motion on this basis. The Court similarly declines to deny the application based on Plaintiffs' other procedural objections and will address the merits of Defendants' arguments, with the following caveat: the Court agrees with Plaintiffs' counsel that in the absence of a violation of a standing Order of the Court, or any other indicia of bad faith, preclusion is not the proper remedy. *See Design Strategy, Inc. v. Davis,* 469 F.3d 284, 297-98 (2d Cir. 2006) ("[P]reclusion of evidence is a harsh remedy, [and] it should be imposed

only in rare situations."); *Lodge v. United Homes, LLC*, 787 F. Supp. 2d 247, 259 (E.D.N.Y. 2011) ("Before the extreme sanction of preclusion may be used . . . , a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses.") (quoting *Outley v. City of New York,* 837 F.2d 587, 591 (2d Cir. 1988)); *Boyde v. Monroe Cnty.,* No. 06-CV-6242, 2011 WL 4457668, at *4 (W.D.N.Y. 2011) (finding preclusion not an appropriate sanction where the court could grant a continuance by reopening discovery). Rather, any relief should in these circumstances take the form of an Order compelling Aziz to testify as to certain topics.

> A. **Counsel's Assertion of Privilege**
>
> 1. *Applicable Law*
>
> a. **Work Product Privilege**

The work product privilege is partially codified in Federal Rule of Civil Procedure 26(b)(3) and protects against disclosure of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." FED. R. CIV. P. 26(b)(3). In addition to "documents and tangible things," the privilege "extends to 'intangible work product,' including 'an attorney's analysis made in anticipation of litigation, but which has not been memorialized.'" *Favors v. Cuomo*, 285 F.R.D. 187, 199 (E.D.N.Y. 2012) (quoting *U.S. v. Ghavami*, 882 F. Supp. 2d 532, 539 (S.D.N.Y. 2012)). Broader than the attorney-client privilege, the work product privilege encompasses both "opinion" and "fact" work product, "the former relating to the mental impressions of counsel and the latter relating to factual investigations and technical analyses." *Favors*, 285 F.R.D. at 199 (citing *In re Grand Jury Subpoena Dated July 6, 2005,* 510 F.3d 180, 183 (2d Cir. 2007)). Like the attorney-client

privilege, the privilege may be impliedly waived where information has been put at issue or where a party "seeks to exploit the doctrine for a purpose inconsistent with the privilege." *The Shinnecock Indian Nation v. Kempthorne,* 652 F. Supp. 2d 345, 365-66 (E.D.N.Y. 2009).

### b. Common Interest Doctrine

The common interest doctrine "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 284 F.R.D. 132, 139 (S.D.N.Y. 2012) (quoting *United States v. Schwimmer,* 892 F.2d 237, 243 (2d Cir. 1989)). Importantly, the doctrine "is not an independent source of privilege or confidentiality" so that "[i]f a communication is not protected by the attorney-client privilege or the attorney work-product doctrine, the common interest doctrine does not apply." *Sokol v. Wyeth, Inc.*, No. 07 Civ. 8442, 2008 WL 3166662, at *5 (S.D.N.Y. Aug. 4, 2008). To properly claim the protection of the common interest doctrine, the parties exchanging otherwise privileged information must establish (1) "a common legal, rather than commercial, interest," *Fireman's Fund Ins. Co.*, 284 F.R.D. at 139 (quoting *Sokol*, 2008 WL 3166662, at *5, as well as (2) that any exchange of privileged information was "made in formulating a common legal strategy [ ] and that the parties understood that the communication would be in furtherance of the shared legal interest." *Fireman's Fund Ins. Co.*, 284 F.R.D. at 140 (quoting *Sokol*, 2008 WL 3166662, at *5, *7).

### c. Attorney-Client Privilege

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." *In re Cnty. of Erie,*

4

473 F.3d 413, 418 (2d Cir. 2007). "To substantiate a claim of attorney-client privilege, the proponent must establish three elements: '(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice.'" *Favors*, 285 F.R.D. at 198 (quoting *Erie*, 473 F.3d at 418). In this Circuit it is well established that "the attorney-client privilege cannot at once be used as a shield and a sword," *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991), and a client may impliedly waive the privilege when "[1] a client testifies concerning portions of the attorney-client communication . . . [2] when a client places the attorney-client relationship directly at issue . . . and [3] when a client asserts reliance on an attorney's advice as an element of a claim or defense." *Favors*, 285 F.R.D. at 198 (quoting *In re Cty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008)).

### 2. *Application*

The Court assumes familiarity with the underlying facts and claims involved in this case. However, for context, the Court briefly summarizes the relevant portions of Aleem Aziz's deposition testimony here. Aziz testified that he is "assistant to the Chief Financial Officer" of Plaintiff Rubie's Costume. Aziz Dep. at 6: 14-16. Aziz works with or within the "Brand Protection Department" of Rubie's, and in addition to "admin work," he works on "special projects" that "originate from Joe [Soccodato] and Marc [Beige]," Rubie's employees and non-attorneys. *Id.* at 37: 8-11; 15: 5-9. He also reports to these two individuals on his special projects. *Id.* at 45: 22-24. His projects have involved "conducting investigations on [ ] different products" of Rubie's sold on Amazon where there existed customer complaints and suspicions of counterfeiting. *Id.* at 27: 18-25. In September or October of 2016, Aziz was instructed to look at

5

products sold by Defendants on Amazon for potential counterfeiting. *Id*. at 39: 18-21; 41: 4-8. He received his instructions via an email from "Lauren Lopez," who is "an account manager for Rubie's." *Id*. at 43: 4-9. Part of the project involved Aziz making "test purchases" of Defendants' products on Amazon. *Id*. at 50: 17. Aziz testified that he received specific instructions to make test purchases from Marc Beige and Joe Soccodato. *Id*. at 58: 8-14; 69: 24-25, 70: 2-5; 75: 18-22. Aziz's first test purchase was made on or around November 3, 2016. *Id*. at 69: 18-22.

Defendants argue that there are at least twelve questions to which Plaintiffs' counsel improperly instructed Aziz not to answer on the basis of an asserted privilege. *See* DE 47, Ex. A. The Court has reviewed the transcript of Aziz's testimony and finds that in many instances, Plaintiffs' counsel improperly instructed Aziz not to answer certain questions on the grounds of attorney-client and work product privileges, as well as the common interest doctrine. Likewise, in some instances, the privilege assertion was far too broad. The relevant questions to which an instruction not to answer was given can be characterized as either (1) questions concerning the people at Amazon with whom Aziz communicated during the course of his "test purchases" and the subject matter of those communications, *see, e.g*., Aziz. Dep. at 222: 22-25, 223: 2-5; 239: 16-22; 240: 2-5; 241: 7-11, 13-22, 23-25; 241: 23-25, 242: 2-4; 242: 8-25, 243: 2; 243: 10-18; 254: 18-25; or (2) questions concerning internal communications between Aziz and other Rubie's employees regarding his investigation. *See id*. at 58: 15-21; 245: 24-25, 246: 2-14; 292: 14-18. The Court addresses each category in turn.

### a. Aziz's Communications with Amazon

In response to questions concerning Aziz's communications with Amazon, Plaintiffs' counsel asserted the attorney work product privilege and the common interest doctrine when directing Aziz not to answer. Under the circumstances of this case, the Court finds the assertion of both the work product privilege and the common interest doctrine to be improper, as explained below.

### i. Assertion of the Work Product Privilege

"It is well established that work-product privilege does not apply to" documents that are prepared "in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998). As the claimant of the privilege, the burden is on Rubie's to show that the information it claims is protected was not prepared in the ordinary course of business or would not have come into existence in essentially the same manner irrespective of the litigation. That is, Plaintiffs must establish that Aziz's investigation and the communications which were part of that investigation came into existence "because of" prospective or actual litigation. *See Adlman*, 134 F.3d at 1202; *Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 106 (S.D.N.Y. 2007) ("This question requires us to consider what 'would have' happened had there been no litigation threat . . . ."). Plaintiffs have made no such showing, nor have they affirmatively asserted that Aziz's investigation and the communications arising from it would have taken place and been produced in the absence of actual or anticipated litigation. Consequently, Plaintiffs have failed to show that they are entitled to the protection of the work product privilege. *See Allied Irish Banks*, 240 F.R.D. at 107 (finding the work product privilege did not apply where the party

7

claiming the privilege did "not attempt to provide a witness to attest to the question of what [it] 'would have' done had there been no threat of litigation, although it is a point on which [it] potentially could offer testimony," and where it did not "affirmatively assert that the [allegedly privileged materials] would *not* have been commissioned had there been no potential for litigation") (emphasis in original).

Nor are Plaintiffs able to assert, let alone show, that Aziz's investigation into Defendants' products on Amazon, and his communications with Amazon, transpired because of litigation or potential litigation. Aziz testified that the "[t]he largest portion of [his special projects related to Amazon] by far ha[ve] been brand protection and brand integrity," and this "involves conducting investigations on I guess different products, where either a customer has reported [ ] items being sold in suspicious ways, suspicious sellers or counterfeit products." Aziz Dep. at 27: 13-23. Aziz investigated "probably, over a hundred" different sellers on Amazon as part of brand protection and integrity. *Id*. at 28: 6-7. Like his other "special projects," Aziz received instructions regarding his investigations of Defendants' products from some combination of Marc Beige, Joe Soccodato, and Lauren Lopez – all of whom are Rubie's employees and none of whom are attorneys. *Id*. at 43: 4-9; 58: 8-14; 69: 24-25, 70: 2-5; 75: 18-22. Similarly, Aziz's investigation began in September or October of 2016, prior to retention of outside counsel, whose representation began "at least after November 14th, [2016]."[1] *Id*. at 68: 19-22.

These facts as they appear in Aziz's deposition testimony support the finding that his investigation into Defendants' products on Amazon was, like his many other investigations, a

---

[1] Plaintiffs' counsel represented on the record that her firm "was involved" with Rubie's relative to the instant matter "at least after November 14th, if not earlier." Aziz Dep. at 68: 19-22.

8

core function of his day-to-day job at Rubie's. Moreover, performing these types of investigations is apparently a core function of Rubie's Brand Protection Department, which is a "single global division" served by in-house counsel. Aziz Dep. at 34: 14-15, 35: 2-8. Because Aziz's investigation and communications with Amazon are, according to his testimony, an ordinary and integral part of his job -- and, more importantly, of Rubie's business -- their existence is not the product of anticipated litigation, and the work product privilege does not apply.

Lastly, the Court observes that "[t]o be entitled to protection for opinion work product, the party asserting the privilege must show 'a real, rather than speculative, concern' that the work product will reveal counsel's thought processes 'in relation to pending or anticipated litigation.'" *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 39 (E.D.N.Y. 2013) (quoting *In re Grand Jury Subpoena Dated July 6, 2005,* 510 F.3d 180, 183-84 (2d Cir. 2007)), *aff'd*, 29 F. Supp. 3d 142 (E.D.N.Y. 2014). Plaintiffs have not made this showing. Indeed, counsel's numerous assertions of the work product privilege were neither justified nor supported in the deposition record and are not supported in Plaintiffs' opposition to the instant motion. *See* DE 50 at 2. For this additional reason, Aziz's communications with Amazon regarding his investigation into Defendants' products are not protected by the work product privilege.

### ii.     Assertion of the Common Interest Doctrine

Because the information Defendants seek regarding Aziz's communications with Amazon is not protected by the work product privilege, Plaintiffs cannot properly assert the common interest doctrine. *See Sokol*, 2008 WL 3166662, at *5 (explaining that the doctrine "is not an independent source of privilege or confidentiality" so that "[i]f a communication is not

9

protected by the attorney-client privilege or the attorney work-product doctrine, the common interest doctrine does not apply"). However, even if Plaintiffs were able to invoke the protection of an independent privilege, they would be unable to claim the protection of the common interest doctrine. Assuming without finding that Plaintiffs and Amazon share a common legal interest, Plaintiffs have made *no* showing that Aziz's communications with Amazon were "made in formulating a common legal strategy [ ] and that the parties understood that the communication would be in furtherance of the shared legal interest." *Fireman's Fund Ins. Co.*, 284 F.R.D. at 140. Rather, the circumstances of this case -- namely, that Aziz performed many "investigations" as part of his job and Rubie's had a "Department" dedicated to this kind of activity -- support the conclusion that Aziz's communications with Amazon were part and parcel of both Rubie's and Aziz's activities in protecting the integrity of the brand, rather than for the purpose of "formulating a common legal strategy" with respect to any specific litigation. Accordingly, the common interest doctrine does not apply in these circumstances.

### b. Internal Communications

The remaining purportedly privileged material consists of internal communications between Aziz and other Rubie's employees regarding his test purchases on Amazon. Specifically, Defendants object to Plaintiffs' assertion of the work product privilege and/or common interest doctrine in response to the following questions: (1) "Did you ever have a discussion with Joe Soccodato or Marc Beige about that spreadsheet?" Aziz Dep. at 292: 14-18; and (2) "Did the attorneys provide you with a list of topics of which you were to assemble materials?" *Id*. at 245: 24-25, 246: 1-14. Defendants further object to counsel's assertion of the attorney-client and work product privileges in response to the following question: (3) "What

10

discussion did you have with Marc Beige about doing these test purchases?" *Id*. at 58: 15-21. *See* DE 47, Ex. A.

The Court finds that counsel for Plaintiffs' assertion of the work product privilege and/or common interest doctrine in response to these three questions is improper for the reasons already stated: the test purchases performed by Aziz were part of his day-to-day job activities, and formed part of an investigation that was not unique to any specific anticipated litigation. Rather, this investigation and others like it were a standard and integral part of Rubie's efforts to protect its brand integrity. Moreover, the first and second questions simply ask whether a communication, and a specific action, respectively, ever occurred. These questions do not address the substance of any discussion, or the content of any "list of topics." As such, they would comprise a permissible line of inquiry even if the substance and content were otherwise privileged. Indeed, claiming the existence of a specific communication or document is, among other things, a predicate for asserting a privilege in the first place. *See Black v. Buffalo Meat Serv., Inc.*, No. 15-CV-49S, 2018 WL 3213288, at *6 (W.D.N.Y. June 29, 2018) ("[D]efendants asked if plaintiff discussed [specific] claims but privilege was invoked. What is missing are the who, what, when, and where of such a conversation called for in Federal Rule 26(b)(5) . . . before the privilege may be asserted.").

As to counsel's assertion of the attorney-client privilege in response to the third question, such an assertion is improper for several reasons. Principally, (1) the communication is not one between an attorney and client, and (2) there is no showing that any discussion between Aziz and Marc Beige was for the purpose of seeking legal advice. *See Favors*, 285 F.R.D. at 198 (explaining that the attorney-client privilege requires establishing the existence of (1) a

communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice). The Court points out that Plaintiffs' counsel is correct in arguing -- as she did on the record when citing *Carter v. Cornell Univ.*, 173 F.R.D. 92 (S.D.N.Y. 1997), *see* Aziz Dep. at 60: 23 -- that certain communications designed to assist counsel in rendering legal representation are subject to the privilege. However, Plaintiffs have failed to meet their burden of showing that any discussions between Aziz and non-lawyers Marc Beige, Joe Soccodato, or Lauren Lopez were undertaken "at the request of counsel and for the exclusive use of counsel in rendering legal representation." *Carter*, 173 F.R.D. at 95. Absent such a showing, the precedent cited by Plaintiff's counsel is inapplicable, and these internal communications are not privileged. *See Montesa v. Schwartz*, No. 12 CIV. 6057, 2016 WL 3476431, at *6 (S.D.N.Y. June 20, 2016) (distinguishing *Carter v. Cornell Univ.* and determining plaintiffs had failed to meet their burden). Moreover, because Aziz's testimony reveals that a not insignificant portion of Rubie's day-to-day operations, and seemingly a majority of Aziz's duties, are focused on brand integrity, it is unlikely that any internal communications with respect to investigations and test purchases would be "at the request of counsel and for the exclusive use of counsel in rendering legal representation." *Carter*, 173 F.R.D. at 95.

    **B.**    **Production of Documents**

Defendants also contend that "despite acknowledging that there were emails between Aziz . . . and Amazon, the plaintiffs completely failed to provide any privilege log even providing the required information about these allegedly privileged documents." DE 47 at 3. The Court notes that at the deposition of Aziz, Defendants' counsel requested a privilege log,

12

Aziz Dep. at 67: 15-25, and Plaintiffs' counsel indicated on the record that Plaintiffs would provide a privilege log. *Id*. at 260: 9-15. There was also a request for additional documents made at the deposition, *see id*. at 263, and a dispute on the record as to whether certain documents were accurate or complete. *See id*. at 265-68.

It is unclear whether any of the disputes as to documents and the provision of a privilege log have been resolved at this time. Based on the opposition filed by Plaintiffs' counsel, it appears that at least some have. The Court directs counsel to jointly inform the Court in writing within seven (7) days of the issuance of this Order whether any outstanding disputes remain regarding documents being provided (including the privileged nature of any documents) and/or a privilege log being served. If so, the Court may require certain documents be provided to Chambers for an *in camera* review.

### C. Conclusion

In light of the above findings, it is hereby ORDERED that Plaintiffs shall produce Aleem Aziz for additional questioning in a continued deposition not to exceed three (3) hours. The deposition shall take place within 21 days of the entry of this Order.[2]

**SO ORDERED.**

Dated: Central Islip, New York
September 28, 2018

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge

---

[2] Any assertion of privilege at the continued deposition of Aleem Aziz is to be made by counsel. Mr. Aziz is not to respond to a question by stating that the information is privileged.